FILED
2025 Mar-18  AM 09:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH BATTS and** | ) | |
| **FREDERICK ROWLETT** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **COLBERT COUNTY** | ) | |
| **SHERIFF'S DEPARTMENT, and** | ) | |
| **SHERIFF ERIC BALENTINE,** | ) | **JURY DEMAND** |
| **IN HIS OFFICIAL CAPACITY** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

## I.    INTRODUCTION

1.    This is an action for legal and equitable relief to redress unlawful discrimination on the basis of race against the Plaintiffs.  The suit is brought to secure the protection of and to redress the deprivation of rights secured by Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. §§ 2000e et seq. (hereinafter "Title VII") and 29 U.S.C §1981 through 29 U.S.C §1983.    Plaintiffs are African-American and assert that Defendants discriminated against them based on their race in violation of Title VII and §1981.

1

Plaintiffs seek injunctive relief, equitable relief, declaratory relief, instatement, back pay, front pay, compensatory, and reasonable attorney fees and costs.

## II.    PARTIES

2.     Plaintiff Elizabeth Batts (hereinafter "Batts" or "Plaintiff") is an African-American female citizen of the United States and a resident of Colbert County, Alabama.   Plaintiff was employed by The Colbert County Sheriff's Department.

3.     Plaintiff Frederick Rowlett (hereinafter "Rowlett" or "Plaintiff") is an African-American male citizen of the United States and a resident of Lauderdale County, Alabama.   Plaintiff was employed with The Colbert County Sheriff's Department

4.     Defendant Colbert County Sheriff's Department is an employer subject to suit under Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 and the Civil Rights Act of 1866 as amended, 29. U. S. C. §1981.

5.     Sheriff Eric Balentine, in his official capacity as Sheriff of Colbert County.

## II.    JURISDICTION AND VENUE

6.     Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331, 1343(a)(3),

1343(a)(4) and 42 U.S.C. § 2000e-5.

7.     Venue is proper in this Court and this judicial division and district. 28 U.S.C. 1391(b) and 42 U.S.C. § 2000e-5(f)(3).   Title VII provides that actions may be brought in any district in the State where "the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice" 42 U.S.C. § 2000e-5(f)(3).

## III.   ADMINISTRATIVE EXHAUSTION

8.     Plaintiffs have met all administrative conditions precedent for filing this case under Title VII.  Plaintiffs timely filed their charges of discrimination within 180 days of the occurrence of the last discriminatory act.  Plaintiffs also timely filed this complaint within 90 days of receipt of a Notice of Right To Sue issued by the Equal Employment Opportunity Commission.

## IV.   CAUSES OF ACTION

## COUNT I – BATTS' DISCRIMINATION CLAIM IN VIOLATION OF TITLE VII

9.     Plaintiff Batts adopts and incorporates paragraphs 1-8 above as if fully set forth herein.

10.    Plaintiff Batts worked as the Criminal Clerk for the Colbert County Sheriff's Department (hereinafter "CCSD") from February 2007 until November 2020.

11.    In 2022, Sheriff Eric Balentine campaigned for the position of Sheriff of the CCSD.

12.    During his campaign, Balentine asked Batts if she would consider returning to the CCSD if he promoted her to Adminstrative Jail Clerk, which was a higher-level position than Criminal Clerk and paid considerably more.

13.    Balentine told Batts that if she accepted the position, she would be ranked directly under Maria Strickland, the Chief Clerk.

14.    In order to get the position, Balentine told Batts that all she had to do was to help Balentine get into office by campaigning for him in the black community

15.    Closer to election time, Balentine called Batts and stated that, "I think we got this, I don't need the black votes to win this election.

16.    Balentine won the election and took office as Sheriff on January 17, 2023.

17.    Batts was brought back into the jail office on January 17th, but could not officially start until Jennifer Withers/Jail Administrative Clerk, resigned from

her positon.    On information and belief, Balentine gave Withers until the end of January 2023 to resign from her position.

18.    Sherry Cornelius, Civil Clerk (white), and Molly Fountain, Criminal Clerk (white), stated that Chief Maria Strickland (white) told them not to talk to Batts, and that Cornelius and Fountain should not hang around Batts' office or Strickland would give them extra work.

19.    Cornelius and Batts took turns covering for Fountain at the front desk when Fountain went to lunch.

20.    Strickland told Batts that she would have to cover Fountain's job during every lunch break, even though Batts out-ranked Cornelius.

21.    Strickland took the "Jail Administrative Clerk" title off of Batts' desk name plate, which had been the same name plate title for the white female employee before Batts, and changed it to "Jail Clerk".

22.    Similarly, Batts received the uniform shirts from the former white Adminstrative Jail Clerk that correctly read Administrative Jail Clerk.  Strickland then tried changing the uniform shirts to read just "Jail Clerk".

23.    Batts went to Balentine about the shirt issue.  Balentine and Chief Lee Smith told Batts not to worrry about what Strickland was trying to do, and instructed Batts to get the correct title on her uniforms.

5

24.    Batts was initially segregated from the white employees by being placed in a break room for her office.

25.    County Commissioner Roger Creekmore had Batts' office remodeled and Batts moved into the office in the Spring of 2024.

26.    Shortly after Batts moved into her newly remodeled office, Strickland began giving Batts extra duties that had been the job duties of Fountain, Lieutenant Smith, and other duties that were not part of the job duties of the former white Adminstrave Jail Clerk.

27.    Strickland had 9-10 boxes moved and randomly piled into Batts' office that contained arrest cards from the 1970-1980's eh 70's-80's. A large table was also stored in Batts office to take up space.

28.    In June 2024, Balentine approached Batts about the possibility of Batts taking over Fountain's job as Criminal Clerk, which would have been a demotion for Batts and paid less. Batts explained that she was happy doing the job that Balentine had promised, i.e., Administrative Jail Clerk, and which she had been hired to do.

29.    On June 17, 2024, Chief Lee Smith called Batts into his office and told her that she would be taking over Fountain's job the next day and that Fountain would be replacing Batts.

30.     Batts told Smith that the arrangement was not fair because she had been hired to do the job as Administrative Jail Clerk and that the Criminal Clerk position was a demotion for less pay.

31.     On June 18, 2024, Balentine called Batts into his office and told her that she had two options, either resign or be fired.

32.     Afraid of not being able to get a state job if she was fired and being given no other option than to accept a demotion at lower pay, Batts resigned on June 20, 2024.

33.     Batts was replaced by Fountain, a white female.

34.     Defendant Balentine is an employer within the meaning of Title VII.

35.     Plaintiff Batts believes she has been discriminated against based on her race, including being subjected to unfair treatment, comments, harassment, attempted discipline, forced termination and other terms and conditions of her employment.  The discrimination and harassment and other actions are in violation of Title VII.

36.     Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an

injunction, and compensatory and punitive damages is her only means of securing adequate relief.

37.    Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT II – BATTS' DISCRIMINATION CLAIM IN VIOLATION OF SECTION 1981

38.    Plaintiff Batts adopts and incorporates paragraphs 1-8 above as if fully set forth herein.

39.    Plaintiff Batts worked as the Criminal Clerk for the Colbert County Sheriff's Department (hereinafter "CCSD") from February 2007 until November 2020.

40.    In 2022, Sheriff Eric Balentine campaigned for the position of Sheriff of the CCSD.

41.    During his campaign, Balentine asked Batts if she would consider returning to the CCSD if he promoted her to Administrative Jail Clerk, which was a higher-level position than Criminal Clerk and paid considerably more.

42.    Balentine told Batts that if she accepted the position, she would be ranked directly under Maria Strickland, the Chief Clerk.

43.    In order to get the position, Balentine told Batts that all she had to do was to help Balentine get into office by campaigning for him in the black community.

44.    Closer to election time, Balentine called Batts and stated that, "I think we got this, I don't need the black votes to win this election.

45.    Balentine won the election and took office as Sheriff on January 17, 2023.

46.    Batts was brought back into the jail office on January 17th, but could not officially start until Jennifer Withers/Jail Administrative Clerk, resigned from her positon.    On information and belief, Balentine gave Withers until the end of January 2023 to resign from her position.

47.    Sherry Cornelius, Civil Clerk (white), and Molly Fountain, Criminal Clerk (white), stated that Chief Maria Strickland (white) told them not to talk to Batts, and that Cornelius and Fountain should not hang around Batts' office or Strickland would give them extra work.

48.    Cornelius and Batts took turns covering for Fountain at the front desk when Fountain went to lunch.

49.    Strickland subsequently told Batts that she would have to cover Fountain's job during every lunch break, even though Batts out-ranked Cornelius.

50.    Strickland took the "Jail Administrative Clerk" title off of Batts' desk name plate,  which had been the same name plate title for the white female employee before Batts, and changed it to "Jail Clerk".

51.    Similarly, Batts received the uniform shirts from the former white Adminstrative Jail Clerk that correctly read Administrative Jail Clerk.  Strickland then tried changing the uniform shirts to read just "Jail Clerk".

52.    Batts went to Balentine about the shirt issue.  Balentine and Chief Lee Smith told Batts not to worrry about what Strickland was trying to do, and instructed Batts to get the correct title on her uniforms.

53.    Batts was initially segregated from the white employees by being placed in a break room for her office.

54.    County Commissioner Roger Creekmore had Batts' office remodeled and Batts moved into the office in the Spring of 2024.

55.    Shortly after Batts moved into her newly remodeled office, Strickland began giving Batts extra duties that had been the job duties of Fountain, Lieutenant Smith, and other duties that were not part of the job duties of the former white Adminstrave Jail Clerk.

56.     Strickland had 9-10 boxes moved and randomly piled into Batts' office that contained arrest cards from the 1970-1980's eh 70's-80's.  A large table was also stored in Batts office to take up space.

57.     In June 2024, Balentine approached Batts about the possibility of Batts taking over Fountain's job as Criminal Clerk, which would have been a demotion for Batts and paid less.  Batts explained that she was happy doing the job that Balentine had promised, i.e., Administrative Jail Clerk, and which she had been hired to do.

58.     On June 17, 2024, Chief Lee Smith called Batts into his office and told her that she would be taking over Fountain's job the next day and that Fountain would be replacing Batts.

59.     Batts told Smith that the arrangement was not fair because she had been hired to do the job as Administrative Jail Clerk and that the Criminal Clerk position was a demotion for less pay.

60.     On June 18, 2024, Balentine called Batts into his office and told her that she had two options, either resign or be fired.

61.     Afraid of not being able to get a state job if she was fired and being given no other options other than a demotion and reduction in pay, Batts resigned on June 20, 2024.

62.    Batts was replaced by Fountain, a white female.

63.    As a result of Defendants' conduct, Batts suffered emotional distress and humiliation.

64.    Defendants' conduct toward Batts was in reckless disregard of her federally protected rights.

65.    Sheriff Balentitne is a person within the meaning of §1981 and §1983.

66.    Plaintiff Batts believes she has been discriminated against based on her race, including being subjected to unfair treatment, comments, harassment, attempted discipline, forced termination and other terms and conditions of her employment.  The discrimination and harassment and other actions are in violation of §1981 and §1983.

67.    Plaintiff Batts has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

68.    Plaintiff Batts is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

## COUNT III – ROWLETTS' DISCRIMINATION CLAIM IN VIOLATION OF TITLE VII

69.     Plaintiff Rowlett adopts and incorporates paragraphs 1-8 above as if fully set forth herein.

70.     Rowlett was hired by CCSD on or about October 22, 2019 as a deputy jailor.

71.     Rowlett was promoted to a supervisor and was made a corporal in 2022.

72.     Around the same time, Rowlett also began doing extra duties of a Sergeant but was not officially promoted to that position.

73.     On February 20, 2024, Rowlett reported for duty and was told by Officer Davis and Officer Posey that an inmate, Chandler Phillips, had continued his behavior of not complying, acting violently, threatening officers, making outbursts and other distrubances, for which he had received daily incident reports since February 16, 2024.

74.     Officers Davis and Posey informed Rowlett that Lieutenant Joshua Smith had said to tase Phillips if there were any further incidents because Smith didn't want to come back up to the jail, and if he did, he would write someone up.

75.     Around that same time, inmate Phillips could be heard from the office arguing with jail staff.

76.    When Officers Davis, Posey and Rowlett arrived to investigate the commotion, Phillips was cursing at the other staff members, being non-compliant with orders, and throwing objects.

77.    Rowlett ordered Phillips to calm down and have a seat on the bench.

78.    Phillips refused Rowlett's orders, stating that he would not comply with anything until he was moved to a different location.

79.    Phillips refused Rowlett's orders, stating that he would not comply with anything until he was moved to a different location.

80.    Phillips continued to curse at the staff and moved towards the door.

81.    Rowlett was not armed with a taser at the time, but ordered Phillips to back up and swore back at him aggressively, hoping Phillips would comply.  He did not.

82.    When Phillips did not comply, Rowlett pushed him back into the cell and towards the bench.  Phillips took a step towards Rowlett, who then grabbed Phillips and took him down to the bench and held him there.  Rowlett told Phillips to calm down, and stop resisting, and he would let Phillips go.

83.    When Phillips eventually calmed down, Rowlett told him that if there were any more outbursts, or if he continued to mule kick the door and/or disrupt the

jail, he would be tased.  All officer left the scene and Rowlett locked the cell door back.

84.    Within a matter of minutes, Phillips mule kicked the door again.

85.    Rowlett verified that one of the officers had a camera rolling.

86.    Rowlett, Officers Davis and Montgomery opened the cell door.

87.    Rowlett then tased Phillips due to him not complying and threatening officers.  Phillips was not sitting at the time he was tased.

88.    Officer Hosea Peralta tased an inmate while the inmate was sitting on a bench and was not disciplined or fired.

89.    Officer Posey witnessed the incident and has stated that Officer Rowlett did not tase Phillips while he was on the bench.  Sherrifff Balentitne has refused to take an official statement from Posey and has "encouraged" him to change his account of the event.

90.    Phillips began pulling the taser prongs out and was then in full compliance.

91.    Rowlett asked Phillips if he wanted to see a nurse.  Phillips said yes and was later seen by a nurse.

92.    Deputy Chief and Sheriff Balentine allegedly had been watching the jail installed cameras.

93.    Lt. Smith was told to write up everyone who did not have a camera on. White officers who did not have a camera on were not written up or reprimanded.

94.    Lt. Smith was told to write up everyone who did not have a camera on. White officers who did not have a camera on were not written up or reprimanded.

95.    About 30 minutes later, Lt. Smith and Warden Rutland  began writing up Officers Montgomery, Davis and Rowlett over the first incident that involved Officers Posey, Davis, Montgomery and Rowlett.

96.    Officer Posey (white) was not written up.

97.    Until this time, Rowlett had never received a write-up.

98.    Rowlett worked for about an hour over his shift on February 21, 2024. Before leaving at 5:30 a.m., he told Lt. Smith that he would return to do his incident report.

99.    Lt. Smith called Rowlett at 8:00 a.m. that morning and reminded Rowlett to come in to fill out the incident report.  Rowlett responded "yes sir".

100.   Rowlett was contacted again before arriving and was told to come to the Sheriff's office when he arrived.

101.   When Rowlett arrived, he was told that his services were no longer needed.

102.   Rowlett tried to explain the situation with tasing Phillips, reiterating that Phillips was not sitting when he was tased, and that Phillips himself had said that everything that had taken place was his (Phillips) fault.

103.   Sheriff Balentine stated "It's my decision."

104.   Similarly situated white employees who have engaged in comparable behavior have not been terminated.

105.   Rowlett's position as supervisor was then filled by a white employee, Officer Posey, who was not written up for not having his camera.

106.   Lieutenant Smith has a reputation for altering tapes to obtain the required outcome and view of incidents.

107.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

108.   Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

109.   Rowlett believes Defendants discriminated against him in the terms, conditions and privileges of his employment including, but not limited to, being terminated because of his race, in violation of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

110.   Sheriff Balentine is an employer within the meaning of Title IV.

## COUNT IV – ROWLETT'S DISCRIMINATION CLAIM IN VIOLATION OF SECTION 1981

111.   Plaintiff Rowlett adopts and incorporates paragraphs 1-8 above as if fully set forth herein.

112.   Rowlett was hired by CCSD on or about October 22, 2019 as a deputy jailor.

113.   Rowlett was promoted to a supervisor and was made a corporal in 2022.

114.   Around the same time, Rowlett also began doing extra duties of a Sergeant but was not officially promoted to that position.

115.   On February 20, 2024, Rowlett reported for duty and was told by Officer Davis and Officer Posey that an inmate, Chandler Phillips, had continued his behavior of not complying, acting violently, threatening officers, making outbursts and other distrubances, for which he had received daily incident reports since February 16, 2024.

116.    Officers Davis and Posey informed Rowlett that Lieutenant Joshua Smith had said to tase Phillips if there were any further incidents because Smith didn't want to come back up to the jail, and if he did, he would write someone up.

117.    Around that same time, inmate Phillips could be heard from the office arguing with jail staff.

118.    When Officers Davis, Posey and Rowlett arrived to investigate the commotion, Phillips was cursing at the other staff members, being non-compliant with orders, and throwing objects.

119.    Rowlett ordered Phillips to calm down and have a seat on the bench.

120.    Phillips refused Rowlett's orders, stating that he would not comply with anything until he was moved to a different location.

121.    Phillips continued to curse at the staff and moved towards the door.

122.    Rowlett was not armed with a taser at the time, but ordered Phillips to back up and swore back at him aggressively, hoping Phillips would comply.  He did not.

123.    When Phillips did not comply, Rowlett pushed him back into the cell and towards the bench.  Phillips took a step towards Rowlett, who then grabbed

Phillips and took him down to the bench and held him there. Rowlett told Phillips to calm down, and stop resisting, and he would let Phillips go.

124. When Phillips eventually calmed down, Rowlett told him that if there were any more outbursts, or if he continued to mule kick the door and/or disrupt the jail, he would be tased. All officer left the scene and Rowlett locked the cell door back.

125. Within a matter of minutes, Phillips mule kicked the door again.

126. Rowlett verified that one of the officers had a camera rolling.

127. Rowlett, Officers Davis and Montgomery opened the cell door.

128. Rowlett then tased Phillips due to him not complying and threatening officers. Phillips was not sitting at the time he was tased.

129. Officer Hosea Peralta tased an inmate while the inmate was sitting on a bench and was not disciplined or fired.

130. Officer Posey witnessed the incident and has stated that Officer Rowlett did not tase Phillips while he was on the bench. Sherrifff Balentitne has refused to take an official statement from Posey and has „encouraged" him to change his account of the event.

131.   Phillips began pulling the taser prongs out and was then in full compliance.

132.   Rowlett asked Phillips if he wanted to see a nurse.  Phillips said yes and was later seen by a nurse.

133.   Deputy Chief and Sheriff Balentine allegedly had been watching the jail installed cameras.

134.   Lt. Smith was told to write up everyone who did not have a camera on. White officers who did not have a camera on were not written up or reprimanded.

135.   About 30 minutes later, Lt. Smith and Warden Rutland  began writing up Officers Montgomery, Davis and Rowlett over the first incident that involved Officers Posey, Davis, Montgomery and Rowlett.

136.   Officer Posey (white) was not written up.

137.   Until this time, Rowlett had never received a write-up.

138.   Rowlett worked for about an hour over his shift on February 21, 2024. Before leaving at 5:30 a.m., he told Lt. Smith that he would return to do his incident report.

139.   Lt. Smith called Rowlett at 8:00 a.m. that morning and reminded Rowlett to come in to fill out the incident report.  Rowlett responded "yes sir".

140.   Rowlett was contacted again before arriving and was told to come to the Sheriff's office when he arrived.

141.   When Rowlett arrived, he was told that his services were no longer needed.

142.   Rowlett tried to explain the situation with tasing Phillips, reiterating that Phillips was not sitting when he was tased, and that Phillips himself had said that everything that had taken place was his (Phillips) fault.

143.   Sheriff Balentine stated "It's my decision."

144.   Similarly situated white employees who have engaged in comparable behavior have not been terminated.

145.   Rowlett's position as supervisor was then filled by a white employee, Officer Posey, who was not written up for not having his camera.

146.   Lieutenant Smith has a reputation for altering tapes to obtain the required outcome and view of incidents.

147.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is her only means of securing adequate relief.

148.    Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

149.    Sheriff Balentine is a person within the meaning of §1981 and §1983.

150.    Rowlett believes Defendants discriminated against him in the terms, conditions and privileges of his employment including, but not limited to, being terminated because of his race, in violation of Title VII and §1981 through §1983.

## V.    **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs respectfully pray that this Court assumes jurisdiction of this action and after trial:

1.    Grant the Plaintiffs a permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys and those acting in concert with the Defendants and at the Defendants' request from continuing to violate Title VII of the Civil Rights Act of 1964, as amended.

2.    Enter an Order requiring the Defendants to make the Plaintiffs whole by awarding backpay (plus interest), compensatory damages, lost seniority, lost pension and other fringe benefits, and nominal damages,

3.    The Plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Dated March 17, 2025

Respectfully submitted,

*s/Russell W. Adams*
Russell W. Adams
Alabama State Bar Number: 3760-A62R
WIGGINS, CHILDS, PANTAZIS, FISHER
& GOLDFARB
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

**PLAINTIFFS HEREBY DEMAND A TRIAL BY STRUCK JURY.**

Plaintiffs request this Honorable Court to serve via certified mail upon the Defendants the following: Summons, Complaint.

Defendants' Addresses:
The Colbert County Sheriff's Department
c/o Civil Division, Process Clerk
United States Attorney's Office
1801 4th Avenue North
Birmingham, Alabama 35203

Sheriff Eric Balentine
c/o Civil Division, Process Clerk
United States Attorney's Office
1801 4th Avenue North
Birmingham, Alabama 35203